UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JANE DOE, | ) | |
| | ) | |
| Plaintiff, | ) | No. 1:23-CV-01679 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| CITY OF CHICAGO and | ) | |
| JAMES E. GONZALES, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

After Jane Doe was assaulted on a Chicago subway platform in March 2021, James Gonzales, a Chicago Police detective, was assigned to investigate the case. R 1, Compl. ¶¶ 16–17.[1] But Doe alleges that Gonzales soon began making unwanted sexual advances towards her and ultimately forced her to have sex with him. *Id.* ¶¶ 19–31. Doe felt unable to reject Gonzales's sexual advances because she feared for her safety and feared that the investigation into the earlier assault would be halted. *Id.* ¶ 44. She also alleges that Gonzales later verbally abused and physically assaulted her. *Id.* ¶¶ 40–43.

Based on these allegations, Doe sued the City of Chicago and Gonzales, bringing three civil rights claims against Gonzales, as well as *Monell* municipal liability and state law indemnification claims against the City.[2] *Id.* at 7–17. Both the City and

---

[1]Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number.

[2]The Court has federal-question jurisdiction under 28 U.S.C. § 1331. Supplemental jurisdiction applies to the state law indemnification claim under 28 U.S.C. § 1367.

Gonzales now move to dismiss the complaint for failure to state a claim. R. 12, City Mot.; R. 34, Gonzales Mot. They argue that Gonzales was not acting under the color of state law when he sexually and physically assaulted Doe. City Mot. at 2–3; Gonzales Mot. at 2–4. The City also contends that Doe fails to adequately allege that there was a widespread practice of police-officer sexual misconduct, that the City was deliberately indifferent to that misconduct, and that the City's practices were the direct cause of Gonzales's unlawful conduct. City Mot. at 3–14. Those arguments all fail, as explained below. Finally, the City argues that Gonzales was acting outside the scope of his employment when he sexually assaulted Doe, so the City need not indemnify him. *Id.* at 15. That argument succeeds. So Gonzales's motion to dismiss is denied, and the City's motion to dismiss is denied as to the *Monell* claim but is granted as to the indemnification claim.

## I. Background

The Court accepts all well-pleaded factual allegations in the Complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Jane Doe, an African-American woman, was assaulted on a Chicago Transit Authority Red Line subway platform on March 3, 2021. Compl. ¶ 16. James Gonzales, a Chicago Police detective, was assigned to investigate the attack. *Id.* ¶ 17. After learning through his investigation that Doe was a survivor of sex trafficking, Gonzales began engaging in a pattern of inappropriate behavior and then outright nonconsensual sexual violence towards her. *Id.* ¶¶ 18–20.

The inappropriate behavior began on March 16, 2021, when Gonzales reached out to Doe to meet about the assault investigation. Compl. ¶ 23. That day, when Gonzales first met Doe, he began non-consensually sexually grooming her by taking her to dinner, giving her money, and hugging and kissing her. *Id.* ¶ 24. Gonzales then began sending Doe sexually charged messages about the investigation and continued making unwanted sexual advances towards Doe via text messages and phone and video calls. *Id.* ¶¶ 26–29. Doe felt unable to reject Gonzales's advances and unable to stop communicating with him because she feared for her safety if she rejected him. *Id.* ¶ 25. On March 18, Gonzales came to the hotel room that Doe was staying at and forced her to have oral and vaginal sex with him. *Id.* ¶ 31. He then paid her $100. *Id.* ¶ 32.

Four days later, after getting Doe's address through Chicago Police Department records, Gonzales picked her up at her home. *Id.* ¶¶ 34–36. He then took Doe to buy a cell phone so that he could keep her updated on the assault investigation. *Id.* ¶ 36. When they were at the cell phone store, Gonzales repeatedly groped Doe, despite her asking him to stop. *Id.* ¶ 37. After leaving the store, Gonzales made several more sexual advances towards Doe. *Id.* ¶ 38. When Doe rejected these advances, Gonzales became angry, verbally abused Doe, and threatened to call the SWAT team to put her in jail. *Id.* ¶ 40. Gonzales then assaulted Doe, twisting her neck, arm, and breast. *Id.* ¶¶ 41–43. After this assault, Doe feared that Gonzales would continue to retaliate against her for refusing his advances, and she feared for her life. *Id.* ¶ 44.

Doe now sues Gonzales and the City of Chicago. Compl. She brings three § 1983 claims against Gonzales for using excessive force against her, unreasonably seizing her, and violating her due process rights. *Id.* at 7–11. She also brings a *Monell* municipal-liability claim and a state law claim for indemnification against the City. *Id.* at 11–17. Gonzales and the City move to dismiss the claims against them, asserting that Doe has failed to adequately state a claim for relief. City Mot.; Gonzales Mot.

## II. Legal Standard

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (cleaned up).[3] The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Ord. of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain

---

[3]This opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (cleaned up). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

### III. Analysis

### A. Under Color of Law

The City begins by arguing that the *Monell* claim fails because Does does not adequately plead that Gonzales was acting under the color of law, a requirement of 42 U.S.C. § 1983. City Mot. at 2–3. Gonzales makes the same argument, contending that all three of the § 1983 claims against him must be dismissed because Doe alleges purely private conduct. Gonzales Mot. at 2–4. Those arguments fail.

Under 42 U.S.C. § 1983, Doe must adequately allege that she was "deprived of a right secured by the Constitution or federal law, by a person acting under color of law." *Thurman v. Vill. of Homewood*, 446 F.3d 682, 687 (7th Cir. 2006). "An action is taken under color of state law if it involves a misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Estate of Sims v. County. of Bureau*, 506 F.3d 509, 515 (7th Cir. 2007) (cleaned up). Here, because there is a tight connection between Gonzales's position and authority as a police officer and his misconduct against Doe, Doe's allegations meet this standard.

For starters, Gonzales came into contact with Doe only because he was assigned as the investigator for the subway-platform assault that she suffered. Compl. ¶¶ 17, 23. He then set up multiple meetings with her to discuss that investigation and proceeded to make unwanted sexual advances towards her at those meetings. *Id.* ¶¶ 23–24, 36–38. It was also through the police investigation that Gonzales learned that Doe was a survivor of sexual trafficking, and he also found Doe's home address through Chicago Police records. *Id.* ¶¶ 18–19, 34–35. The assault at the cell phone store also happened in the context of the investigation: Gonzales and Doe went to the store so that he could buy her a cell phone to keep Doe updated about the investigation. *Id.* ¶¶ 36–37. Most importantly, the unstated but obvious premise in all of Gonzales's interactions with Doe was that if Doe rejected his sexual advances, then the police investigation into her assault would be put into jeopardy, and Gonzales could use his power as a police officer to retaliate against Doe. *See id.* ¶¶ 25, 44. So Gonzales's status as a police officer and his role as the investigator of Doe's assault were the driving and enabling forces behind him sexually and physically assaulting her. His unlawful actions were thus taken under the color of the law.

The City and Gonzales counter that because the allegations here involve sexual misconduct in particular, the misconduct cannot be related to Gonzales's official duties as a police officer. City Mot. at 3; Gonzales Mot. at 3. It is of course obvious that sexual advances and assault are not part of Gonzales's official duties as a police officer. But, as the Supreme Court explained long ago, that is not the test for whether an officer acted under color of law. *See Monroe v. Pape*, 365 U.S. 167, 183–184 (1961).

6

The question is whether an officer acted under *color* of law—not whether the officer acted in compliance with the law. *Id.* at 184. Officers act under color of law when they misuse power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law," *id.* (cleaned up). That general principle applies just as much to the specific context of unlawful sexual activities: if the officer misused his authority and position as a police officer to engage in that misconduct, then he has acted under the color of state law. *Estate of Sims*, 506 F.3d at 515; *see also Chavez v. Guerrero*, 465 F. Supp. 2d 864, 869–870 (N.D. Ill. 2006).

Here, Gonzales's alleged sexual assaults were not committed merely as a private citizen; they were enabled by Gonzales's role as the police detective for the investigation into the subway-platform assault suffered by Doe. If not for Gonzales's official authority, for all we know he would not even have encountered Doe, nor would he have been able to access her background information (to learn about her prior victimization in sex trafficking), and would not have had a reason to take her to the cell phone store. Compl. ¶¶ 17–19, 34–37. And to repeat, Doe felt unable to refuse Gonzales's sexual advances because she feared that he would stop investigating the earlier assault if she reject him, and feared that he would use his unique power and position as a police officer to retaliate against her. *See id.* ¶¶ 25, 44. The alleged sexual assaults were thus enabled by Gonzales's performance of his police duties and by his official authority as a police detective. On these allegations, he acted under the color of state law. *See Chavez*, 465 F. Supp. 2d at 869. Perhaps discovery will reveal facts that undermine this conclusion, but at the pleading stage, enough has been

7

proffered. Because the color-of-law argument is Gonzales's only contention in moving to dismiss, his motion to dismiss is also denied. *See* Gonalzes Mot.

### B. *Monell* Liability

The City makes three more arguments in arguing that Doe fails to adequately plead *Monell* liability. These are close calls, but none require dismissal at the pleading stage. First, the City contends that there are insufficient allegations of a widespread practice of sexual misconduct among Chicago police officers, at least so much so that the practice could be considered to have the force of law. City Mot. at 3–7. To successfully plead *Monell* liability under the widespread-practice theory, Doe must adequately allege that the sexual assaults were caused by "a governmental practice or custom that, although not officially authorized, is widespread and well settled." *Thomas v. Cook Cnty. Sheriff's Dept.*, 604 F.3d 293, 303 (7th Cir. 2010). Doe adequately sets forth this element.

First, Doe alleges that the City has a "code of silence," which means that police officers generally do not report misconduct committed by fellow officers. Compl. ¶ 68. She adds that the City's policymakers "are aware of, and condone and facilitate by their inaction," this code of silence in the Chicago Police Department. *Id.* That allegation is offered at a very high level of generality, but there is more. Doe also relies on the now well-known consent decree that the City entered with the State of Illinois, in early 2019, to resolve a civil rights case targeting the Chicago Police Department. *Id.* ¶ 75. The City agreed to develop and implement a policy prohibiting sexual misconduct by Chicago Police officers. *Id.* ¶ 76. But Doe alleges that two years later, and

8

as of the time of Gonzales's sexual assaults (in March 2021), the City had still not developed or implemented a sexual-misconduct policy under the decree. *Id.* These allegations adequately set forth that the City had a widespread practice of covering up, silencing, and ignoring sexual misconduct committed by officers, like the misconduct that Gonzales allegedly engaged in. It is true that discovery might very well reveal other policies, steps, or facts that would undermine the notion of a widespread practice of officer sexual misconduct. But at the pleading stage, Doe has offered enough.

Next, the City argues that Doe inadequately alleged that the City was deliberately indifferent to the consequences of the identified widespread practices. City Mot. at 7–13. "To demonstrate that the [City] is liable for a harmful custom or practice, the plaintiff must show that [City] policymakers were deliberately indifferent as to the known or obvious consequences." *Thomas*, 604 F.3d at 303 (cleaned up). "Therefore, in situations where rules or regulations are required to remedy a potentially dangerous practice, the [City's] failure to make a policy is also actionable." *Id.* Again, Doe pleads enough on this element.

Doe alleges that despite the consent decree's recognition of the need to develop and implement a policy against sexual misconduct for Chicago Police officers, the City failed to take this step as of March 2021, when Gonzales allegedly assaulted her. Compl. ¶ 76. That was more than two years after the consent decree went into effect, and yet the City had still not issued a specific sexual misconduct policy, leaving the City out of compliance with the decree. *Id.* And that was despite the consent decree's

9

requirement that the City develop and implement the policy within 180 days. *Id.* ¶ 75. Plus, Doe asserts that despite recognizing the widespread practice of sexual misconduct committed by Chicago officers—as shown by entering into the consent decree—the City buries data on officer sexual misconduct within a catch-all data category called "Conduct Unbecoming," "which includes behavior such as an unkempt uniform." Compl. ¶ 76. These allegations together adequately set forth that the City has been deliberately indifferent to the alleged widespread practices of sexual misconduct and cover-ups among police officers.

The City responds that it has taken active steps to address misconduct among its officers. City Mot. at 8–10. But the steps that the City identifies relate to excessive force during arrests and discriminatory practices among officers, rather than addressing sexual misconduct in particular. *Id.* at 8–12. The City does not identify specific steps it has taken to deal with the sexual misconduct, despite the need identified in the consent decree for the City to develop a sexual misconduct policy for officers. *See id.* And to repeat, the City had not yet issued the required policy even two years after entering the consent decree. Compl. ¶ 76. Deliberate indifference has been adequately alleged.

Finally, the City argues that there is no direct causal link between the widespread practices and Gonzales's commission of the sexual assaults. City Mot. at 13–15. To adequately allege causation, Doe must allege that the City's practices and failure to act were "the *moving* force behind the constitutional violation." *Thomas*, 604

10

F.3d at 306 (cleaned up) (emphasis in original). There is enough in the complaint on this too.

Remember that at the pleading stage, the Court "draw[s] all reasonable inferences … in favor of the nonmovant." *Vesely v. Armslist LLC*, 762 F.3d 661, 664 (7th Cir. 2014). Again, the City was required to develop a sexual misconduct policy but still had not done so at the time of the sexual assaults. Compl. ¶ 76. This alleged lollygagging and feet dragging would plausibly send a message to officers that the City does not take sexual misconduct amongst its officers seriously, which in turn would embolden officers to commit the misconduct. Doe also alleges that the Chicago Police Department and the City's policymakers have a culture of covering up misconduct that does occur within the police force. *Id.* ¶ 68. That general allegation—combined with the specific consent-decree requirement to issue a sexual-misconduct policy and the City's failure to do so—supports the inference that the widespread practice emboldened Gonzales to commit the assaults by making him believe that he could commit the sexual assaults and get away with it without consequence.[4] That inference is enough to establish that the City's widespread practices and deliberate indifference that Doe identifies were moving forces behind Gonzales's unlawful assaults. Again, discovery might very well undermine the allegation of causation, including

---

[4] The Court cautions Doe that it may be difficult to prove this causal link with evidence at the summary-judgment stage. But taking all of Doe's allegations as true at this motion to dismiss stage, she establishes causation.

whether Gonzales even knew about the consent-decree requirement. But for now, the *Monell* claim survives.

### C. Indemnification

Finally, the City contends that Doe's state law indemnity claim must be dismissed because Gonzales was not acting within the scope of his employment. City Mot. at 15. This state law question is different from whether Gonzales was acting under color of law under 42 U.S.C. § 1983. Under the Illinois Local Governmental and Governmental Employees Tort Immunity Act, a municipality must indemnify an employee who is liable for a judgment while acting within the scope of his employment. 745 ILCS 10/9-102. That means that the City is off the hook for indemnifying Gonzales if he was acting outside the scope of his employment when he sexually assaulted Doe.

The fact that Gonzales was allegedly acting under the color of state law for § 1983 purposes does not necessarily mean that he was also acting within the scope of his employment under Illinois state law. *See Coleman v. Smith*, 814 F.2d 1142, 1149 (7th Cir. 1987). These are two separate, independent inquiries and are governed by different standards. *Id.* The conduct of an employee "is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve" the employer. *Pyne v. Witmer*, 543 N.E. 2d 1304, 1308 (Ill. 1989) (cleaned up). Illinois courts have held that, as a matter of law, "acts of sexual assault are outside the scope of employment" because employee conduct "that is solely for the benefit of the employee" is not within

12

the scope employment. *E.g.*, *Deloney v. Board of Educ. of Thornton Twp.*, 666 N.E.2d 792, 797–98 (Ill. App. Ct. 1996) (citing cases). As a matter of law, Gonzales's sexual assaults were outside the scope of his employment. So the City's motion to dismiss is granted as to the state law indemnity claim.

## IV. Conclusion

James Gonzales's motion to dismiss, R. 34, is denied across-the-board. The City of Chicago's motion to dismiss, R. 12, is denied as to the *Monell* claim (Count 4) and granted as to the indemnification claim (Count 5). But the indemnification claim is dismissed without prejudice, because Doe has not yet had a chance to amend the complaint. Doe may file an amended complaint by April 28, 2025, if she wishes to replead that claim. In any event, by April 14, 2025, the Defendants must answer the current complaint (except the City need not answer the indemnification claim) so that discovery can get moving.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: March 30, 2025

13